| | | |
|---|---|---|
| DR. ALAN RESNICK AND DR. JAMES THOMPSON, derivatively, on behalf of the ASSOCIATED ALLERGISTS & ASTHMA, LTD. DEFINED BENEFIT PENSION PLAN & TRUST; and ASSOCIATED ALLERGISTS & ASTHMA, LTD., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 04944 |
| v. | ) ) | Judge Edmond E. Chang |
| DR. DONALD SCHWARTZ; RONALD SPITZ; and RONALD SPITZ AND ASSOCIATES, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Over 17 years ago, Dr. Donald Schwartz withdrew, in a lump sum, over $800,000 in benefits from his pension plan with Associated Allergists, Ltd. R. 29, Corr. Am. Compl. at 3 ¶ 2.[1] But he should not have taken a lump sum: Dr. Schwartz was a "highly compensated" employee as defined by federal pension-benefits law, so he was required to take annuity payments over time instead of a lump-sum payment. *Id.* at 3 ¶ 3.[2] Now the Plan's current fiduciaries have brought suit against both Dr. Schwartz and the Plan's then-actuaries, Ronald Spitz and Spitz and Associates, alleging ERISA violations as well as Illinois state claims. *See* Corr. Am. Compl. at 12-

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.
[2] The Corrected Amended Complaint does not use consecutively numbered paragraphs, so citations refer first to the page of the pleading followed by the relevant paragraph number.

22.[3] Both Dr. Schwartz and the Spitz Defendants move to dismiss the claims against them, arguing that the Corrected Amended Complaint (for convenience's sake, the remainder of the Opinion will drop the "Corrected") fails to adequately state a claim, and in any event, the claims are barred by the statute of limitations. *See* R. 32, Spitz Def. Br.; R. 36-1 Schwartz Br.[4] For the reasons discussed below, the motions are granted in part and denied in part.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Associated Allergists & Asthma, Ltd. is a medical practice operating out of Highland Park, Illinois. *See* Corr. Am. Compl. at 2 ¶¶ 1-4. Its affiliated doctors may participate in a pension plan, sponsored by Associated Allergists, which manages the Plan and is responsible for its administration. *Id.* at 2 ¶ 3. The Plan has a number of Trustees, two of whom brought this suit derivatively on behalf of Associated Allergists and its Defined Benefit Pension Plan & Trust. *See id.* at 1. The Plan is governed by a Shareholders Committee. *See id.* at 2 ¶ 4.

Sometime during 2000, Dr. Donald Schwartz retired and became eligible to receive payments from the Plan. *See* Corr. Am. Compl. at 3 ¶ 1. Schwartz took a lump-

---

[3] This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331. The Court has jurisdiction over the accompanying state law claims premised on the same allegations under 28 U.S.C. § 1367.

[4] Ronald Spitz and Ronald Spitz & Associates, Inc. will be referred to as "Spitz" for ease of reference.

sum distribution of $822,596.00 (or $1,377,807.00),[5] rather than smaller annual payouts through an annuity. *See id.* at 3 ¶ 1. At the time, he was both a participant in the Plan and a member of the Shareholders Committee—according to the Plaintiffs, Schwartz used that governance role to advise and direct the Plan's actuary, Spitz and Associates, to facilitate the lump-sum payment. *Id.* at 2 ¶ 4, 3 ¶ 1. Schwartz received the lump-sum payment in 2000. *Id.* at 3 ¶ 2.

The problem with that form of payment, Associated Allergists says, is that Schwartz was a "highly compensated" employee, as defined by the Internal Revenue Code. Corr. Am. Compl. at 3 ¶ 3. In 2000, highly compensated employees were prohibited from taking a lump-sum payment from pension funds unless one of the limited exceptions applied. *Id.* at 3 ¶ 4. According to Associated Allergists, Schwartz did not qualify for any exception from the ban: the payment was more than $5000; the Plan's assets when taking into account its current liabilities did not equal or exceed 110% after the lump-sum payment; the value of the payment was not less than 1% of the value of the Plan's liabilities; and the distribution to Schwartz did not include repayment provisions in the event that the Plan terminated. *Id.* at 3-4, ¶¶ 4-5; *see* 26 C.F.R. §1.401(a)(4)-5(b)(3)(IV).

Fast forward 16 years. By May 2016, Associated Allergists was using a new actuary, Carnow and Associates, to administer the Plan. Corr. Am. Compl. at 15 ¶ 18. At that time, Carnow allegedly notified the Plan, as well as its participants and beneficiaries, that the payment made to Schwartz in 2000 was an illegal distribution.

---

[5] The Amended Complaint alleges that the amount was one of the two, Corr. Am. Compl. at 3 ¶ 3; which one does not actually impact the outcome of the dismissal motions.

*Id.* Drs. Alan Resnick and James Thompson were then and are now Trustees, participants, and beneficiaries of the Plan. *Id.* at 2 ¶¶ 1-2, 5-6 ¶ 8. After learning of the illegality of the lump-sum payment, Drs. Resnick and Thompson filed this suit derivatively on behalf of the Plan, as well as on behalf of Associated Allergists. *See generally* Corr. Am. Compl.

At the time of the lump-sum payment in 2000, Dr. Schwartz, Dr. Thompson, and Dr. Resnick were beneficiaries and participants in the Pension Plan. Corr. Am. Compl. at 5 ¶ 7. The Amended Complaint alleges that Dr. Schwartz, in his capacity as a member of the Shareholders Committee of the Pension Plan, was a fiduciary to the participants and beneficiaries of the Pension Plan when he sought, directed, and received the lump-sum payment. *Id.* at 2 ¶ 4, 5 ¶ 7. The Amended Complaint also alleges that Dr. Schwartz was a "functional fiduciary," because he allegedly had power over Plan assets, was aware that he could not legally take a lump-sum payment, took the payment anyway, and never did tell the Plan's Trustees that the payment was ill-gotten. *Id.* at 5 ¶ 7. At the same time, Drs. Thompson and Resnick allege that, by facilitating the payment, the actuary at the time, Spitz, individually and through his business, conspired with Schwartz to violate Schwartz's fiduciary obligations to the Plan. *Id.* at 6-7, ¶¶ 8, 10. Spitz also allegedly violated the terms and conditions of the actuary's contract with the Plan, *id.*, and violated the actuarial Code of Professional Conduct. *Id.* at 8 ¶ 11.

Drs. Resnick and Thompson hinge their claims on a few pivotal allegations. First, in order to conceal the illegality of the payment, Spitz falsely represented to

the Shareholders Committee that the lump-sum payment was legal "and/or" that the withdrawal would be "made up over[] time." Corr. Am. Compl. at 5-6, ¶ 8. As part of the alleged cover-up, Spitz deliberately did not mark a particular box on the Plan's Annual Return (known as a Form 5500), which otherwise would have admitted that the actuary "has not fully reflected" a "regulation or ruling promulgated under the statute" in completing the form. *Id.* at 6 ¶ 7. For Schwartz's part, along with supposedly conspiring with Spitz, the Plaintiffs claim that Schwartz knew that the lump-sum payment was illegal, but took it anyway, without ever informing the other committee members of its illegality. *Id.* at 5 ¶ 7, 7 ¶ 10.

Seventeen years later, Drs. Resnick and Thompson derivatively seek to hold Schwartz and Spitz accountable for the illegally taken payment. The Amended Complaint asserts that Dr. Schwartz violated his fiduciary duties to the Plan under ERISA (Count 1), Corr. Am. Compl. at 10 ¶ 11, and participated in a prohibited transaction under ERISA (Count 2), *id.* at 12 ¶ 11. The Plaintiffs further contend that Spitz and Spitz & Associates participated in a prohibited transaction under ERISA (Count 3), *id.* at 14, ¶ 13, and that Spitz should be ordered to disgorge his fees under ERISA (Count 4), *id.* at 16 ¶ 14. The Plaintiffs also bring supplemental state law claims against Spitz for violating the terms of the engagement contract with the Plan (Count 5), *id.* at 17 ¶ 7; for violating the actuarial Code of Professional Conduct

(Count 6), *id.* at 19 ¶ 7; as well as for Spitz's responsibility for a penalty Associated Allergists paid due to Spitz's faulty recommendation (Count 7),[6] *id.* at 21 ¶ 4.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[7] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

---

[6] The payment penalty allegation is labeled as Count 8 in the Corrected Amended Complaint, but Plaintiffs mistakenly omitted a Count 7, so the Court considers the final cause of action to be Count 7. *See* Am. Corr. Compl. at 21 ¶ 4.

[7] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, *Cleaning Up Quotations, 18 Journal of Appellate Practice and Process* 143 (2017).

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### 1. Dr. Schwartz

### A. Fiduciary Duties under ERISA

The primary claims in this case arise under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 *et seq.* ERISA protects the "interests of participants in employee benefit plans and their beneficiaries." *Id.* § 1001(b). It does that by, among other things, establishing "standards of conduct," and holding fiduciaries of employee-benefit plans responsible for performing their obligations legally and effectively. *See id.* Here, the Plaintiffs contend that Dr. Schwartz breached his fiduciary duties to the Pension Plan and participated in a prohibited transaction under ERISA. Corr. Am. Compl. at 10 ¶ 11, 12 ¶ 11.

At the outset, it is worth noting that neither side disputes (at least at the pleading stage) that the original payment was illegal. *See generally* Spitz Def. Br.; Schwartz Br. Indeed, ERISA *does* have a provision that restricts a tax-qualified pension plan (like Associated Allergists' Plan) from paying out lump-sum pension benefits to one of the top 25 most "highly compensated" employees in a Plan. 26 C.F.R. § 1.401(a)(4)-5(b)(3). Taking the Plaintiffs' allegations as true, Dr. Schwartz met the definition. Corr. Am. Compl. at 3 ¶ 3. There are exceptions to the rule, such as if the plan's assets after the distribution cover at least 110% of the value of the remaining liabilities, 26 C.F.R. § 1.401(a)(4)-5(b)(3)(iv)(A)-(v), but that was not the case here.

Corr. Am. Compl. at 3-4 ¶ 4. Associated Allergists has included this regulatory restriction in the Plan's terms since at least 1994, and it appears to have been in effect when Dr. Schwartz took the lump-sum payment. *See* Spitz Def. Br. Exh. 1a, Pension Plan at 31.[8]

Participants, beneficiaries, and fiduciaries—like both Drs. Resnick and Thompson are in this case—may bring civil actions "for appropriate relief" under Section 502 of ERISA. 29 U.S.C. § 1132(a)(2). "Appropriate relief" against a fiduciary may include damages for (1) losses to an employee benefit plan resulting from a breach of fiduciary duties; and (2) restoration of profits reaped through the illegal use of the plan's assets. 29 U.S.C. § 1109(a). A plan's fiduciaries are also restricted from making certain transactions with the plan, 29 U.S.C. § 1106(b), and those violations are actionable as well. The Plaintiffs want to hold Schwartz personally liable for damages resulting from the lump-sum payment, Corr. Am. Compl. at 10 ¶ 11, 12 ¶ 11, and the ERISA liability theories relied on by the Plaintiffs require adequate allegations that Dr. Schwartz was acting as a fiduciary when he ordered and received the payment.

Put another way, a claim for "breach of fiduciary duties under ERISA is only valid against a 'fiduciary.'" *Klosterman v. W. Gen. Manag., Inc.,* 32 F.3d 1119, 1122

---

[8] The Spitz Defendants attached the text of the Associated Allergists, Ltd. Defined Benefit Pension Plan terms document to their motion to dismiss. On a motion to dismiss, the Court may consider documents incorporated by reference to the pleadings without transforming the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiffs' claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Plan is at the heart of the case, so it is appropriate to consider the Plan's terms at the pleading stage.

(7th Cir. 1994). Although the Plaintiffs allege that Dr. Schwartz was a fiduciary—referring to him, at times, as either a "fiduciary" or a "functional fiduciary," Corr. Am. Compl. at 2 ¶ 4, 5 ¶ 7—those are just conclusory labels of a legal term of art. *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 792 (7th Cir. 1996). Instead of relying labels, the Amended Complaint must allege sufficient facts. *Id.* To state a claim, the Plaintiffs must allege that Dr. Schwartz "was a fiduciary as that term is defined in the statute" and that he was "acting in [his] capacity as a fiduciary at the time [he] took the actions that are the subject of the complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 471 (7th Cir. 2007).

ERISA sets forth various ways in which someone is deemed a fiduciary, and two are pertinent here:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, … or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Plumb v. Fluid Pump Serv., Inc.,* 124 F.3d 849, 854 (7th Cir. 1997); 29 U.S.C. § 1002(21)(A). A plaintiff does not need to show that a person was vested with every form or authority listed above: the definition expressly provides that a person is a fiduciary "to the extent" that the person "performs *one* of the enumerated tasks." *Plumb,* 124 F.3d at 854 (emphasis added); *see also Coleman v. Roofing Concepts, Inc.,* 969 F.2d 54, 61 (7th Cir. 1992). So when evaluating whether a person may be deemed a fiduciary, the Court is tasked with determining "whether a person is a fiduciary with respect to the particular activity at issue." *Coleman,* 969 F.2d at 61.

In the Amended Complaint, the Plaintiffs allege that, at the time, Dr. Schwartz was a member of the "Shareholders Committee" of the Plan. Corr. Am. Compl. at 2 ¶ 4. Although the Amended Complaint does not describe the Committee's role in detail, it does allege that the Shareholders Committee was responsible for "certifying and authorizing [the] distribution." *Id.* at 10 ¶ 11. It is true that the Plan does not actually refer to a "Shareholders" Committee. Instead, the Plan defines the "Committee" as the "administrative committee" that "administer[]s the Plan." Plan § 2.10. The Committee bears the "general responsibility for administering the Plan and carrying out its provisions," Plan § 7.1, and the Committee's primary duty and power are explained this way:

> The Committee on behalf of the Participants and all other Beneficiaries of the Plan and Trust will enforce the Plan in accordance with the terms of the Plan and the Trust and will have all powers necessary to accomplish that purpose … .

Plan § 7.4. Returning to the Amended Complaint, the Plaintiffs also allege that Schwartz "possessed power over Plan Assets"—enough so that he was able to make the payment to himself without raising any alarm when it happened in 2000. *Id.* at 5 ¶ 7.

Keeping in mind that fiduciary status is not an "all-or-nothing concept," *Coleman*, 969 F.2d at 61, the Plaintiffs have sufficiently pleaded that Dr. Schwartz was acting as a fiduciary with regard to the lump-sum payment made to him in 2000. It is clear from the pleadings that he had at least some of the "discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary.'" *Id.* At the pleadings stage, it is reasonable to infer that Schwartz wielded discretionary

authority when, as part of the Shareholders Committee (presumably, the "Committee" under the Plan), he certified and authorized the payment in a lump-sum form rather than as an annuity. *Id.* at 10 ¶ 11. It would be one thing if the Amended Complaint accused Schwartz of performing some ministerial act, dictated by some formula. But the Plaintiffs allege more than that, namely, that Schwartz took part in authorizing the lump-sum payment, and there is nothing to suggest that was a routine, non-discretionary act. To be sure, the paucity of the allegations and the confusing reference to the "Shareholders" Committee made this a close call, and perhaps discovery will uncover facts to the contrary. At the pleading stage, however, there are enough allegations to raise an inference that Schwartz was acting as a fiduciary.

From there, the other elements of the claims against Schwartz readily click into place. Because he was plausibly acting as a fiduciary, Schwartz breached that fiduciary obligation by authorizing an illegal payment, one that was prohibited under ERISA and the Plan's terms. *See* 29 U.S.C. § 1109(a). In the same vein, he allegedly engaged in a prohibited transaction as a "fiduciary" that "cause[d] the plan to engage" in an improper payment to himself. *See* 29 U.S.C. § 1106(a). In sum, the Amended Complaint adequately states a claim under ERISA for violations of Schwartz's fiduciary duty.[9]

---

[9] Before moving on, it is worth noting that, in their reply brief, the Plaintiffs also argued that Dr. Schwartz could be liable for participating in a prohibited transaction even if he was not a fiduciary, because the actual funds were disbursed to him. It is true that an equitable claim might be viable against Dr. Schwartz for disgorgement of the payment—but only if the money has not been dissipated and the Plaintiffs can trace it to an identifiable fund. *See infra* III.2.A.; *see also Montanile v. Board of Trustees of the Nat'l Elevator Indus.*

**B. Damages**

Next up is Dr. Schwartz's contention that the ERISA claims must be dismissed because there are no allegations that the Plan suffered damages. Schwartz Br. at 14. This argument misses the mark by a wide margin. It is true that ERISA Section 409 provides that a fiduciary is "personally liable" to the Plan for "any losses to the plan resulting" from the breach, 29 U.S.C. § 1109(a), so a "loss" is required for a valid claim, *Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.,* 578 F.3d 505, 512 (7th Cir. 2009). But the Amended Complaint clearly alleges a loss: it specifically asserts that the Plan has suffered damages of at least "7% per annum" compounded return on investment as well as $50,000 due to the payment of a fine for failing to meet the Minimum Funding Standards prescribed by the IRS in 2014 and 2015. Corr. Am. Compl. at 10-11 ¶ 13. These concrete money damages are sufficient to satisfy the loss element of the claim, and in his brief, Schwartz ignores them rather than reckons with them.

**C. Statute of Limitations and Fraudulent Concealment**

Not surprisingly, the most serious obstacle for the Plaintiffs is the statute of limitations, because the lump-sum payment was made way back in 2000 and the case was filed 17 years later. It is true that the statute of limitations is an affirmative defense, so a Rule 12 dismissal motion is generally not the proper vehicle to present it. But when the allegations of the complaint itself reveal the limitations problem,

---

*Health Benefit Plan,* 136 S. Ct. 651 (2016). But the Amended Complaint specifically alleged that Schwartz "participated in a transaction prohibited by 29 U.S.C. § 1106(a)," which only covers those transactions performed by fiduciaries (as opposed to 29 U.S.C. § 1106(b), for instance), so the Court need not address that theory of liability right now.

then a court may consider it at the pleadings stage. *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). If a plaintiff asserts that fraudulent concealment tolls the statute of limitations, then "a bare allegation of fraudulent concealment" will not necessarily save the claim, *id.*, although courts must be wary of dismissing the case at the pleadings stage if discovery is warranted.

The 17-year gap between the lump-sum payment and the suit's filing does justify examining the issue now. Generally speaking, a claim for breach of fiduciary duty must be brought within the *earlier* of (1) six years from the date of the last action constituting part of the breach or violation; or (2) three years from when the plaintiff gained "actual knowledge of the breach or violation." 29 U.S.C. § 1113(1), (2); *see also Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 674 (7th Cir. 2014). ERISA provides for an exception to those limitations periods: "in the case of fraud or concealment," the plaintiff has "six years after the date of discovery of such breach or violation." § 1113.

On the face of the Amended Complaint, the three-year limitations period in § 1113(2) has expired. The three-year period starts when the plaintiff acquires "'actual knowledge' of the occurrence" that caused the alleged injury. *Rush v. Martin Petersen*, 83 F.3d 894, 896 (7th Cir. 1996) (quoting § 1113(2)). For purposes of Section 1113(2), actual knowledge simply requires that the plaintiff knows the "essential facts of the transaction or conduct constituting the violation." *Id.* (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)). All that is required is knowledge of the *facts* comprising the violation: it is "not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or *knowledge of its*

*illegality.*" *Id.* (emphasis added) (quoting *Martin*, 966 F.2d at 1086 (7th Cir. 1992)). So the key to the start-date is knowledge of the *facts*, not the *legal* import of the facts.

Under that definition of actual knowledge, the Amended Complaint expressly acknowledges that the lump-sum withdrawal was made known to the Plan and, indeed, was even made known to the Drs. Resnick and Thompson, who are proceeding derivatively on behalf of the Plan. Corr. Am. Compl. at 5-6 ¶¶ 6, 8(b) (describing representations made by Spitz to Resnick and Thompson).[10] So actual knowledge of the payment itself is conceded. The Plaintiffs argue that they learned of the distribution's "illegality" in May 2016, when the Plan's new actuaries advised them that the prior payment was illegal. Corr. Am. Compl. at 11 ¶ 16. But knowledge of illegality is not required to trigger "actual knowledge" for limitations purposes; it is knowledge of the facts that counts. *Rush*, 83 F.3d at 896. Based on the Amended Complaint's own allegations, the three-year period expired.

But that does not doom the case, at least at the pleadings stage, because the Plaintiffs contend that the fraud-or-concealment exception to the limitations period applies. Corr. Am. Compl. at 5 ¶ 8; *id.* at 11 ¶ 17; Pl. Resp. to Schwartz at 7. As noted earlier, Section 1113 provides that, "in the case of fraud or concealment," the plaintiff has "six years after the date of discovery of such breach or violation" to file the lawsuit. § 1113. Schwartz argues that, even so, the Plaintiffs have failed to sufficiently allege fraudulent concealment in the Amended Complaint. Schwartz Br.

---

[10] The Corrected Amended Complaint labels two paragraphs in a row as Paragraph "8" on pages 5 and 6. The citation in the Opinion's text is to the first one, which starts on page 5.

at 10. As discussed earlier, however, a plaintiff is not required to plead around an affirmative defense like the statute of limitations. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "Complaints need not contain any information about defenses and may not be dismissed for that omission" unless plaintiffs factually plead themselves out of court. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). So the facts underlying the fraud-or-concealment exception need not be pled in the Amended Complaint at all, let alone meet the requirements of Rule 9(b)'s particularity standard.

Having said that, based on what has been alleged so far, it is worth limiting the first phase of discovery to the applicability of the fraud-or-concealment exception. And it is worth providing, right now, some guidance on the exception's metes and bounds, because the parties did address it and because discovery going forward will be shaped by its substantive scope. The Seventh Circuit has interpreted ERISA's statutory fraud-or-concealment exception to incorporate the federal common law's doctrine of fraudulent concealment. *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (citing *Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988)); *Martin,* 966 F.2d at 1093-94. Fraudulent concealment tolls the statute of limitations when a defendant's actions prevented a plaintiff's "timely discovery of the wrong she has suffered." *Radiology Ctr.,* 919 F.2d at 1220. The qualifying actions can take one of two forms: first, "actual concealment" by the defendant, that is, "some trick or contrivance intended to exclude suspicion and prevent inquiry" that is separate from the underlying misconduct. *Martin,* 966 F.2d

at 1095 (quoting *Wood v. Carpenter,* 101 U.S. 135, 143 (1879). Or, second, if the breach of fiduciary itself involves "self-concealing acts." *Id.* at 1095.

On that understanding of the fraud-or-concealment exception, it is not clear what the Plaintiffs are going to rely on in advancing the exception. Again, they need say nothing in the Amended Complaint or response brief, but what they have said so far is cause for pessimism. Drs. Resnick and Thompson allege that Spitz falsely represented to them and the Shareholders Committee that the lump-sum payment was legal "and/or" that the withdrawal would be made up over time. Corr. Am. Compl. at 5-6 ¶ 8. But the "and/or" formulation suggests that the Plaintiffs are presenting various possibilities: perhaps Spitz (presumably on behalf of Schwartz) represented that the payment was legal *and* would be made up over time—but why would it need to be made up over time if it was legal? Or perhaps only one of those things actually happened (either Spitz said it was legal *or* Spitz said it would be made up over time)— but Drs. Resnick and Thompson were supposedly the recipients of the pertinent representation, so which was it?

In light of the shaky start to the fraudulent concealment exception, at the outset, discovery will be limited to that defense. The parties shall make Rule 26(a)(1) disclosures on the issue,[11] and of course the defense may issue an interrogatory request asking for the Plaintiffs for the specific legal and factual bases of the defense (at the same time, the Plaintiffs may initiate discovery on the defense too). The case management plan will be discussed at the next status hearing.

---

[11] In light of the focus on the fraudulent concealment exception, the Court is removing this case from the Mandatory Initial Discovery Pilot Project.

## 2. Spitz Defendants

### A. ERISA Claims

In Count 3 of the Amended Complaint, the Plaintiffs asserted a claim for money damages arising out of Spitz's alleged participation in facilitating the lump-sum payment, which was a prohibited transaction under ERISA. Corr. Am. Compl. at 14 ¶ 13. But the Plaintiffs now concede that Count 3 must be dismissed, because money damages are not available against a non-fiduciary like Spitz. R. 54, Pl. Resp. Spitz Def. Br. at 2; *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 253 (2000); *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 263 (1993). The Plaintiffs contend, however, that Count 4 should survive. In that count, the Amended Complaint seeks "disgorgement" of actuarial fees paid to Spitz over the course of his 17-year professional relationship with Associated Allergists. Corr. Am. Compl. at 16 ¶ 14. Over those 17 years (from 2000 to 2016), Spitz has received fees in the total amount of $285,600. *Id.* (There is no allegation of how much was paid in each year; dividing the total by 17 yields $16,800 per year.)

The Plaintiffs acknowledge that the ERISA provision on which they rely, Section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), does not permit *legal* remedies and instead limits recovery to "appropriate *equitable* relief." § 1132(a)(3)(B) (emphasis added); R. 54, Pls.' Spitz Resp at 3-4. With that limit in mind, the Plaintiffs argue that what they label "disgorgement" of fees in the Amended Complaint is a form of equitable "restitution" that Section 502(a)(3)(B) permits. But a look behind the labels reveals that the Plaintiffs are wrong.

The key case on this issue is *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-14 (2002). In *Great-West*, an employer's health plan covered over $400,000 in medical expenses arising out of a covered participant's car accident. *Id.* at 207. Much of the amount was paid by Great-West, which provided stop-loss insurance to the Plan. *Id.* The terms of the health-insurance coverage gave the Plan a right to reimbursement from the participant for medical expenses if the participant recovered money from someone else for the medical treatment. *Id.* In turn, the Plan assigned its right to reimbursement to Great-West. *Id.* The participant filed a lawsuit against the maker of the car and other tortfeasors, and obtained a $650,000 settlement. *Id.* at 207-08. But the parties to the lawsuit allocated only around $14,000 to medical expenses. *Id.* at 208. Relying on Section 502(a)(3), Great-West in turn filed a lawsuit against the participant to enforce the reimbursement provision. *Id.*

The Supreme Court rejected the insurer's reliance on Section 502(a)(3) because Great-West's claim was an action at law, not in equity. 534 U.S. at 212-14. To explain its decision, the Court first reiterated a prior holding, specifically that Section 502(a)(3) only authorizes actions for equitable relief as traditionally found in equity, that is, "the categories of relief that were *typically* available in equity." *Id.* at 210 (cleaned up) (emphasis in original). Money damages generally are considered a form of legal remedy rather than an equitable one:

> Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. And money damages are, of course, the classic form of legal relief.

*Id.* (cleaned up).

Of particular importance in this case, *Great-West* also explained that affixing the label of "restitution" on a remedy does *not* always mean that the relief is equitable: "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. To determine on which side of the law-equity line restitution falls in a particular case, courts examine both the basis of the claim and the type of remedy sought: "whether it is legal or equitable depends on the *basis* of the plaintiff's claim and the *nature* of the underlying remedies sought." *Id.* at 213 (cleaned up) (emphases added). If a plaintiff cannot show "title or right to possession of *particular* property," then restitution is "at law," not in equity. *Id.* (emphasis added). In contrast, restitution is in equity if "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Even in that situation—when the plaintiff's claim targets *particular* funds—there is still another limit to classifying restitution as equitable: "But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor … ." *Id.* (cleaned up). Applying those principles, the insurer in *Great-West* was not seeking equitable relief to "particular" property in the hands of the plan participant, and instead was seeking to impose a personal liability for reimbursement of the medical expenses. *Id.* at 214. In contrast, if a health-plan participant agreed to convey particular funds to a plan (like the proceeds of a settlement), and the plan sought the particular funds (rather than a money judgment from general assets), then that

would qualify as a claim for equitable relief. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362-64 (2006).

Here, under those principles, neither the basis for the Plaintiffs' claim against Spitz nor the nature of the remedy sought is equitable. First, the basis for the claim is *not* that Spitz agreed to convey particular funds to the Plaintiffs, or that the actuarial fees would be held in trust for the Plaintiffs. *See Sereboff*, at 363-64 (agreement to hold property in trust could form the basis for an equitable claim). Instead, the Plaintiffs' claim is premised on Spitz's alleged misconduct in helping (or not preventing) Schwartz withdraw the lump sum. Corr. Am. Compl. at 16 ¶ 13. But that is either a professional malpractice claim (for providing negligent actuarial services), a breach-of-contract claim (for failing to provide proper actuarial services), or maybe a fraud claim (if Spitz intentionally misrepresented the legality of the withdrawal). All of those are claims *at law*, not in equity. *See Buzard v. Houston*, 119 U.S. 347, 353 (1886) (cited by *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47-48 (1989)). So the Plaintiffs have not identified an equitable basis for the claim.[12]

Nor is the nature of the remedy equitable, because the Plaintiffs do not seek *specific* funds. Instead, the Amended Complaint says that the Plaintiffs "pray for

---

[12] Indeed, the Plaintiffs come perilously close to forfeiting the argument that the restitution of professional fees from Spitz is in equity rather than at law. Much of their argument is a block quote from Great-West, but without further elaboration. R. 54, Pls.' Resp. at 3-4. There is no consultation of the treatises on remedies cited by Great-West, *see* 534 U.S. at 217 ("Rarely will there be need for any more 'antiquarian inquiry,' … than consulting, as we have done, standard current works such as Dobbs, Palmer, Corbin, and the Restatements, which make the answer clear."), let alone an argument as to why restitution of the fees qualifies as equitable. The only argument advanced by the Plaintiffs is citation (again without explaining the underlying rationale) to four district court opinions, which the Opinion discusses *infra*.

judgment against Ronald Spitz and Ronald Spitz and Associates … in the *amount* of $285,600 in *actual damages*, punitive damages to be determined by the Court … ." Corr. Am. Compl. at 17 (emphases added). That is not a request for a particular fund. The Amended Complaint simply asks, as a remedy, for a money judgment of $285,600. Indeed, for all the Amended Complaint alleges, Spitz might very well have dissipated the fees—remember that the fees were paid for a time period spanning 2000 to 2016. Dissipation of the fees would be another reason why the nature of the remedy sought by the Plaintiffs cannot possibly be equitable. *See Montanile v. Board of Trustees of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 659 (2016) ("If, instead of preserving the specific fund subject to the lien, the defendant dissipated the entire fund on nontraceable items, that complete dissipation eliminated the lien. … The plaintiff had merely a personal claim against the wrongdoer—a quintessential action at law.") (cleaned up).

As noted earlier, *supra* at 20, n. 12, the Plaintiffs do not offer much in the way of analysis on the law-equity dividing line. They do cite to four district court opinions. But those cases do not support the Plaintiffs' position. First, all of them were decided before *Montanile*, so to the extent that the cases allowed a plaintiff to recover from general assets rather than obtain specified property, *Montanile* no longer permits that form of remedy. Second, two of the cited cases did not even analyze the at-law versus in-equity distinction. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp.2d 511, 571 (S.D. Tex. 2003) (addressing when accounting firm may be deemed a fiduciary); *New York St. Teamsters Council Health and Hosp. Fund v.*

*Estate of DePerno*, 816 F. Supp. 138, 149 (N.D.N.Y. 1993) (addressing whether attorney was a knowing participant in the breach of fiduciary duty). Lastly, the fact patterns of the other two cases at least suggested that title to the funds never actually changed, so the professionals could at least plausibly be deemed to hold the funds in trust for the plaintiffs. *L.I. Head Start Child Dev. Servs., Inc. v. Frank*, 165 F. Supp.2d 367, 371-72 (E.D.N.Y. 2001) (attorneys knew that they were being paid from reserve fund of plan contributions); *Rispler v. Sol Spitz Co.*, 2007 WL 1926531, at * (E.D.N.Y. 2007) (attorneys received plan funds but not for services rendered). So none of these cases help the Plaintiffs. Ultimately, the claim in Count 4 is neither based on equity not does it seek a remedy that is equitable in nature. The claim is dismissed with prejudice.[13]

## B. State Law Claims Against Spitz

With the only federal claims against Spitz dismissed from the case, the sole claims remaining against him are state law claims. The presumption is that if federal claims have been dismissed, and the only remaining claims are state law claims, then a federal court ought to relinquish supplemental jurisdiction over the state claims. *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C.

---

[13] The dismissal is with prejudice because Plaintiffs have already amended the complaint once, and there is no reason to think that the *basis* for the claim can ever be properly characterized as equitable. In theory, it is possible that the *nature* of the remedy could be amended to ask for any non-dissipated funds, but that would not overcome the problem that the *basis* for the claim is simply not equitable (not to mention the practical problem that almost surely the vast majority of the fees paid from 2000 to 2016 have been dissipated).

§ 1367(c)(3).[14] Right now, it is unclear whether the ERISA claims against Schwartz will survive the statute of limitations defense. As instructed earlier, discovery will be limited to the issue of fraudulent concealment. Opinion at 16. If, after the limited discovery, the statute of limitations is dispositive, then there would be no federal claims at all. The state law claims are cutting-edge contract and malpractice claims, and would be better decided in state court. So, for now, the Court will hold off on deciding the viability of the state law claims against Spitz. Instead, those claims will be held in abeyance until the statute of limitations defense is decided as to Schwartz.

## IV. Conclusion

For the foregoing reasons, Schwartz's motion to dismiss is denied for now, and Spitz's motion to dismiss is granted as to the ERISA claims. Discovery shall commence on Schwartz's statute of limitations defense. The parties shall make Rule 26(a)(1) disclosures on the issue, and the defense may issue an interrogatory request asking for the Plaintiffs for the specific legal and factual bases of the defense (at the same time, the Plaintiffs may initiate discovery on the defense too). The case management plan will be discussed at the next status hearing. To give the parties a

---

[14] No one asserts that diversity jurisdiction applies.

chance to review this Opinion and consider next steps, the status hearing of September 5, 2018 is reset to September 20, 2018 at 10:30 a.m.[15]

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2018

---

[15] The Court strongly encourages the parties to engage in settlement negotiations to avoid protracted litigation, which would continue to consume attorneys' fees and expenses, as well as greatly distract the parties themselves, in light of the litigation risk.