UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. ALAN RESNICK AND DR. JAMES THOMPSON, derivatively, on behalf of the ASSOCIATED ALLERGISTS & ASTHMA, LTD. DEFINED BENEFIT PENSION PLAN & TRUST; and ASSOCIATED ALLERGISTS & ASTHMA, LTD., ) ) ) ) ) ) ) | |
| Plaintiffs, ) | No. 17 C 04944 |
| v. ) ) ) | Judge Edmond E. Chang |
| DR. DONALD SCHWARTZ; RONALD SPITZ; and RONALD SPITZ AND ASSOCIATES, INC., ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Over 17 years ago, Dr. Donald Schwartz withdrew, in a lump sum, over $800,000 in benefits from his pension-plan account with Associated Allergists. R. 29, Corr. Am. Compl. at 3 ¶ 2.[1] But he should not have taken a lump sum: under federal pension-benefits law (known by its acronym, ERISA), Dr. Schwartz was considered a "highly compensated" employee, so he was required to take annuity payments over time instead of a lump-sum payment. *Id.* at 3 ¶ 3. Eventually, the Plan's current fiduciaries, Drs. Alan Resnick and James Thompson, brought suit against both Dr. Schwartz and the Plan's then-actuaries, Ronald Spitz and Ronald Spitz and

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. The Corrected Amended Complaint does not use consecutively numbered paragraphs, so citations refer first to the page of the pleading followed by the relevant paragraph number.

Associates[2] (collectively the Defendants), alleging ERISA violations as well as Illinois state claims. *See* Corr. Am. Compl. at 12-22.[3]

Earlier in the case, both Dr. Schwartz and the Spitz Defendants independently moved to dismiss the claims against them. R. 32, Spitz's Mot. Dismiss Br.; R. 36-1 Schwartz's Mot. Dismiss Br. As relevant here, Schwartz argued that the Plaintiffs' claims were barred by ERISA's three-year statute of limitations. The Court agreed with Schwartz in general, but nevertheless denied Schwartz's motion to dismiss because the fraudulent-concealment exception to ERISA's statute of limitations might apply. Whether the exception applied, though, could not be resolved at the pleading stage, so the Court allowed the parties to take discovery on that limited issue. After the parties finished the limited discovery, the Defendants moved for summary judgment, R. 87, Defs.' Mot. Summ. J., and t1he Plaintiffs cross-moved against the limitations defense, R. 89, Pls.' Mot. Summ. J. For the reasons discussed below, the Defendants' motion is granted.

## I. Background

### A. Factual Background

This Opinion assumes familiarity with the facts described in the prior opinion that decided the Defendants' motions to dismiss. R. 61, 9/3/18 Opinion at 2-6; *Resnick v. Schwartz*, 2018 WL 4191525, at *1-2 (N.D. Ill. Sept. 3, 2018). In deciding the motion for summary judgment, the Court must view the evidence in the light most favorable

---

[2]Ronald Spitz and Ronald Spitz & Associates, Inc. will be referred to as "Spitz" for ease of reference.

[3]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331 and supplemental jurisdiction over the accompanying state law claims under 28 U.S.C. § 1367.

2

to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Because both parties have both moved for summary judgment, the Court will consider the evidence in the light most favorable to each party to see if the opposing party is entitled to summary judgment.[4]

Sometime in early 2000, Dr. Donald Schwartz retired and became eligible to receive payments from his pension plan with Associates Allergists & Asthma (for clarity's sake, this opinion will call it the "Plan"). R. 86, DSOF ¶¶ 4, 8; R. 89-2, Pls.' Resp. DSOF ¶¶ 4, 8.[5] At the time of his retirement, the total amount due to Schwartz from the Plan was at least $822,596. DSOF ¶ 8; Pls.' Resp. DSOF ¶ 8. Schwartz chose to have those pension benefits paid in a single lump sum, rather than smaller annual payouts through an annuity. DSOF ¶ 11; Pls.' Resp. DSOF ¶ 11. On February 16, 2000, Schwartz received a lump-sum payment of $822,596. DSOF ¶ 17; Pls.' Resp. DSOF ¶ 17. About a year later, Ronald Spitz, the actuary for the Plan from 1999 through 2016, mailed Associated Allergists the IRS forms related to participant distributions for calendar year 2000, which included Schwartz's 2000 Form 1099-R. DSOF ¶ 19; Pls.' Resp. DSOF ¶ 19. That form reflected the $822,596 lump-sum distribution to Schwartz that was made back in February 2000. *Id.*

---

[4]The Court notes that the Plaintiffs failed to cite to the parties' Local Rule 56.1 Statements of Fact in support of their brief.

[5]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" for Defendants' Statement of Facts [R. 86]; "PSOF" for Plaintiffs' Statement of Facts [R. 89-1]; "Pls.' Resp. DSOF" for Plaintiffs' Response to Defendants' Statement of Facts [R. 89-2]; "Defs.' Resp. PSOF" for Defendants' Response to Plaintiffs' Statement of Facts [R. 94].

At the time of the distribution, Schwartz did not personally communicate with Dr. Alan Resnick or Dr. James Thompson, who were Trustees of the Plan (as well as participants and beneficiaries of the Plan), about the distribution. DSOF ¶ 21; Pls.' Resp. DSOF ¶ 21. But neither did Schwartz take any overt acts to conceal the distribution from Resnick or Thompson. DSOF ¶ 22; Pls.' Resp. DSOF ¶ 22. Either way, the Plan, Resnick, and Thompson all knew about the lump-sum disbursement the day it was made. DSOF ¶¶ 17-18; Pls.' Resp. DSOF ¶ 17-18; R. 89-1, PSOF ¶ 1. What Resnick and Thompson did not know at the time, however, was that Schwartz was restricted from taking a lump-sum payment from the pension fund under ERISA because he was a "highly compensated" employee, as defined by the Internal Revenue Code. DSOF ¶¶ 12-13; Pls.' Resp. DSOF ¶¶ 12-13. Since at least 1994, the Plan has included that regulatory restriction against highly compensated employees in the written terms of the Plan document. DSOF ¶ 14; Pls.' Resp. DSOF ¶ 14. But it was not until May 2016, when the Plan's new actuary discovered the applicability of the restriction, that Resnick and Thompson, along with the other Trustees, beneficiaries, and participants of the Plan, actually found out that Schwartz's lump-sum distribution was not proper under the law. PSOF ¶ 6; Defs.' Resp. PSOF ¶ 6.

### B. Procedural History

Some seventeen years after the lump-sum distribution, Resnick and Thompson sued Schwartz and Spitz for the illegal lump-sum withdrawal. The Plaintiffs asserted in their Amended Complaint that Dr. Schwartz violated his fiduciary duties to the Plan under ERISA (Count 1) and participated in a prohibited transaction (Count 2).

4

The Plaintiffs further contended that Spitz too participated in the prohibited transaction (Count 3), and that Spitz should be ordered to disgorge his fees (Count 4). The Plaintiffs also brought supplemental state law claims against Spitz (Counts 5, 6, and 7).[6] Both Dr. Schwartz and the Spitz Defendants independently moved to dismiss the claims against them, arguing that the Corrected Amended Complaint (for convenience's sake, the remainder of the Opinion will drop the "Corrected") failed to adequately state a claim, and in any event, the claims are barred by the statute of limitations. *See* Spitz's Mot. Dismiss Br.; Schwartz's Mot. Dismiss Br.

The Court granted Spitz's motion to dismiss the ERISA claims, and denied Schwartz's motion. *Resnick*, 2018 WL 4191525, at *10. As relevant here, the Court held that, on the face of the Amended Complaint, the claims against Schwartz were barred by ERISA's three-year statute of limitations because the lump-sum distribution happened in 2000 and the Plaintiffs knew about the distribution at that time. *Id.* at *6. But the Plaintiffs' had invoked ERISA's longer fraud-or-concealment statute of limitations, which gives a plaintiff "six years after the date of discovery of such breach or violation" to commence an action, 29 U.S.C. § 1113. *Id.* at *6-7. And at that stage of the case, the Plaintiffs were not required to plead the facts underlying the exception. *See id.*; *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). So the Court denied Schwartz's motion to dismiss to allow for limited discovery on whether the fraudulent-concealment exception applies. *Resnick*, 2018

---

[6]The payment-penalty allegation is labeled as Count 8 in the Corrected Amended Complaint, but the Plaintiffs skipped over the number 7. *See* Am. Corr. Compl. at 21 ¶ 4.

5

WL 4191525, at *7. The Court also stayed the state law claims against Spitz until the limitations defense as to Schwartz was resolved.

After finishing the limited discovery, both sides have now moved for summary judgment on the statute of limitations defense. Schwartz and Spitz filed a combined motion arguing that the undisputed facts revealed in discovery now demonstrate that ERISA's fraudulent-concealment exception does *not* apply. In response, the Plaintiffs argue that the undisputed facts show that the exception applies.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).[7] The Court "may not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is

---

[7]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, *Cleaning Up Quotations, 18 Journal of Appellate Practice and Process* 143 (2017).

6

no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

#### A. Statute of Limitations and Fraudulent Concealment

As explained in the previous opinion, ERISA provides that any plan fiduciary who breaches fiduciary duties is "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. The statute, however, limits the time in which an action for breach of fiduciary duties may be brought. Specifically, ERISA dictates that an action is too late after the earlier of: (1) three years after the earliest date on which the plaintiff had *actual knowledge* of the breach; or (2) six years after the date of the last action which constituted a part of the breach (or in the case of an omission, the latest date on which the fiduciary could have cured the breach). *See* 29 U.S.C. §§ 1113(1)-(2).

Based on the allegations in the Amended Complaint, the Court previously held that the three-year limitations period expired before the suit's filing. The Plaintiffs now contend that that decision was "misplaced,"[8] arguing that the Court got the legal standard wrong. Pls.' Mot. Summ J. at 5-6, 13. Although the Plaintiffs did not

---

[8]The Court notes that in addition to the three-year limitations arguments, the Plaintiffs have also raised inapt claim-preclusion arguments. *See* Pls.'s Resp. Br. at 11-12. Claim preclusion is simply not pertinent to the current summary judgment motions; there is no prior case between the parties from which claim preclusion could arise.

7

formally ask the Court to reconsider the prior opinion, the Court will nevertheless address the Plaintiffs' contention without rehashing the entire issue.

In holding that the three-year period had expired, the Court explained that, in this Circuit, "actual knowledge" for § 1113(2) purposes "required knowledge of all material facts but not knowledge of every detail or *knowledge of its illegality*." *Resnick,* 2018 WL 4191525, at *6 (citing *Rush v. Martin Petersen*, 83 F.3d 894, 896 (7th Cir. 1996) (quoting *Martin v. Consultants & Admrs., Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992))) (emphasis in original). According to the Plaintiffs, though, the clock instead starts ticking when a plaintiff has actual knowledge of the "underlying *breach*," or illegality, as opposed to the underlying facts. Pls.'s Mot. Summ. J. at 5-6, 8-13 (emphasis added).

The Plaintiffs quote a number of cases to support their contention, but none of those cases actually support the Plaintiffs' argument. First, the decision in *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), interpreted the statute of limitations applicable to securities fraud actions under § 10(b) of the Securities Exchange Act, and not ERISA's three-year limitations period nor the fraudulent-concealment in ERISA. *See id.* at 648. The statutory text of the § 10(b) limitations period ("2 years after the discovery of the facts constituting the violation," 28 U.S.C. § 1658(b)(1)) is not the same as the text of ERISA's limitations periods. More importantly, *Merck* did not address whether knowledge of the *illegality* of the acts at issue is required to start the clock ticking (as the Plaintiffs contend) or if the clock starts once the plaintiffs know about just the *acts* themselves. Instead, *Merck* only addressed (1) whether

8

actual knowledge of facts—as distinct from imputing knowledge of facts that could have been discovered with reasonable diligence—is required for § 10(b)'s limitations period to start running, 559 U.S. at 648; and (2) whether the clock starts ticking even if the securities-fraud plaintiff has yet to discover facts about the defendant's state of mind, 559 U.S. at 649-50. Neither holding has any bearing on the Plaintiffs' argument in this case.

As for the remainder of the cases that the Plaintiffs rely on, the cases actually end up supporting the holding of the prior opinion. Block-quoting language from *Fish*, the Plaintiffs contend that the three-year bar applies "only when the plaintiff knows not only the facts underlying the alleged violation but also that those facts constitute a *violation* under ERISA." Pls.' Mot. Summ. J. at 13 (citing to *Fish v. Greatbanc Trust Co.*, 749 F. 3d 671, 678-79 (7th Cir. 2014)). But the Plaintiffs fail to mention that, in the language quoted, the Seventh Circuit was summarizing the law in *other* circuits—the Third and Sixth Circuits—and not the law in this Circuit. *See* Pls.' Mot. Summ. J. at 13 (citing *Fish*, 749 F. 3d at 678-79). Relying on the same precedent that this Court cited (including *Martin*), the Seventh Circuit in *Fish* went on to explain that "*this* court's precedent … requires knowledge of all material facts but *not* knowledge of every detail or knowledge of illegality." *Id.* (emphases added) (cleaned up). The district court in *George* likewise applied the same definition. *See George v. Kraft Foods Global, Inc.*, 814 F. Supp. 2d 832, 850 (N.D. Ill. 2011) (citing *Martin*, 966 F.2d at 1086). Based on that definition, there is no doubt that the three-year statute of limitations expired—the Plaintiffs conceded that they knew about the lump-sum

9

distribution when it happened. Corr. Am. Compl. at 5-6 ¶¶ 6, 8(b); DSOF ¶¶ 17-18; Pls.'s Resp. DSOF ¶ 17-18; R. 89-1, PSOF ¶ 1.

With that established, the Court moves on to the fraudulent-concealment exception. In cases of "fraud or concealment," ERISA provides that an action may be commenced no later than six years after the date of discovery of the breach of fiduciary duty. 29 U.S.C. § 1113. The Seventh Circuit has interpreted this exception to incorporate federal common law's doctrine of fraudulent concealment. *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir.1990) (citing *Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir.1988)); *Martin*, 966 F.2d at 1093-94. Fraudulent concealment tolls the statute of limitations when the defendant has prevented the plaintiff's "timely discovery of the wrong she has suffered." *Radiology Ctr.*, 919 F.2d at 1220.

In the context of fraudulent concealment for statute of limitations purposes, fraud can take one of two forms: (1) acts that are "self-concealing"; and (2) overt acts that misrepresent the significance of facts of which the beneficiary is aware. *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013) (citing *Martin*, 966 F. 2d at 1094). "In the former, concealment is established by the nature of the act; on the latter, additional facts of concealment are required to trigger the tolling doctrine." *Martin*, 966 F.2d at 1094. To the extent that "concealment" is a separate part of the fraudulent-concealment doctrine, there must be "actual concealment—i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.* at 1095 (cleaned up). In other words, the defendant must take "affirmative steps to hide the violation."

10

*Laskin*, 728 F.3d at 735 (citing *Radiology Ctr.*, 919 F.2d at 1220). Although the statute of limitations is, generally speaking, an affirmative defense, fraudulent concealment is an expansion of the ordinary statute of limitations, so it is the plaintiff's burden to show that the exception applies. *George v. Kraft Foods Global, Inc.*, 814 F. Supp. 2d 832, 848 (N.D. Ill. 2011); *Wasserstein v. Univ. of Chicago*, 2018 WL 3474543, at *4 (N.D. Ill. July 19, 2018).

In this case, the Plaintiffs' invocation of the fraud-or-concealment exception fails for two reasons. First, the Plaintiffs fail to provide any evidence suggesting that the Defendants concealed the alleged breach of fiduciary duty or the underfunding.[9] The undisputed facts demonstrate that the Defendants took no affirmative acts to conceal anything: Schwartz neither personally communicated with the Plaintiffs about the distribution, DSOF ¶ 21; Pls.'s Resp. DSOF ¶ 21, nor took any overt acts to conceal it, DSOF ¶ 22; Pls.'s Resp. DSOF ¶ 22. Omissions—without more—do not demonstrate the kind of "affirmative steps" that trigger the fraud exception. *See e.g. Wasserstein*, 2018 WL 3474543, at *5 (holding that failure to provide plaintiff with sufficient details about the plan and his eligibility benefits was not an affirmative act of concealment for purposes of the fraud exception); *George*, 814 F. Supp. 2d at 849 (citing *Martin*, 966 F.2d at 1094); *see also Laskin*, 728 F.3d at 735 (citing *Radiology Ctr.*, 919 F.2d at 1220) ("[A] finding of concealment requires evidence that a defendant

---

[9]The Plaintiffs suggest that discovery on the issue of the fraudulent concealment exception is incomplete. *See* Pls.'s Mot. Summ. J. Br. at 3. But back in February 2019, both parties reported to the Court that fact discovery was complete. *See* R. 84, 2/12/2019 Minute Entry. And at no point did Plaintiffs move to compel or further extend discovery. So they cannot now claim that discovery is incomplete.

11

took affirmative steps to hide the violation itself."); *Martin*, 966 F.2d at 1094 (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879) ("Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.")) (cleaned up).

Despite these undisputed facts, the Plaintiffs nevertheless contend that the exception applies because Defendants allegedly engaged in self-concealing acts. Pls.'s Mot. Summ. J. at 4, 6-7. According to the Plaintiffs, the Defendants' acts were self-concealing because they failed to disclose the legal basis and calculations for the distribution. *Id.*; R. 104, Pls.'s Reply Br. at 2. But "fraud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims. "There must still be *actual concealment.*" *Martin*, 966 F.2d at 1095 (emphasis added). "[T]he defendant must engage in some misleading, deceptive or otherwise contrived action or scheme, in the course of committing the wrong, that is designed to mask the existence of a cause of action." *Id.* at 1094. In *Martin*, for example, the defendants actively concealed an alleged kickback scheme by channeling the kickbacks through a dummy corporation, where the kickbacks were falsely labeled as payments for services supposedly rendered. *See id.* at 1095-96. But here, the Plaintiffs have failed to point to any evidence suggesting that the Defendants took any steps to cover their tracks, or to hide the distribution. When it comes down to it, the Plaintiffs really are repeating the argument that, yes they knew about the lump sum, but they did not know that it was illegal. That does not amount to the

12

fraudulent-concealment exception to ERISA's statute of limitations, even when the evidence is viewed in the Plaintiffs' favor.

Lastly, the Plaintiffs failed to present any evidence demonstrating that they exercised due diligence in uncovering the alleged breach and underfunding. As the Defendants point out, the Plan has contained, since 1994, a section outlining the restrictions on lump-sum distributions to highly compensated employees. DSOF ¶ 14; Pls.'s Resp. DSOF ¶ 14. So had they exercised due diligence, the Plaintiffs could have discovered the alleged restriction. The Plaintiffs contend, though, that even if they had exercised due diligence, they had insufficient data or facts that would have resulted in discovery of the violation because they did not know the plan was underfunded. *See* Pls.'s Mot. Summ. J. at 12. But Plaintiffs offer no *evidence* from which a factfinder could conclude that due diligence would not have led to the discovery of the breach or underfunding. The remaining ERISA claims are thus time barred.

### B. State Law Claims Against Spitz

With the ERISA claims dismissed, the remaining claims are the state-law claims against Spitz, so the usual presumption kicks in: "when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). This presumption is expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original

13

jurisdiction have been dismissed. Here, the ERISA claims created federal-question jurisdiction, and neither party has asserted diversity jurisdiction. Given that there is no basis for jurisdiction without the ERISA claims, there is no good reason to hang onto the state law claims. This Court thus relinquishes supplemental jurisdiction over the state law claims.

## IV. Conclusion

For the reasons discussed, the Defendants' motion for summary judgment is granted on the ERISA claims against Schwartz. The Plaintiffs' cross-motion is denied. The Court relinquishes jurisdiction over the remaining state-law claims. The status hearing of January 10, 2020 is vacated. A final judgment will be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 27, 2019